Noel C. ALLEN, Rebecca O'Neill Allen, Individually and on Behalf of the Estate of Travis O'Neill Allen, Plaintiffs,

v.

Michael LEAL, Carle Upshaw, and the City of Bellaire, Texas, Defendants.

Civil Action No. 96–30.

United States District Court, S.D. Texas, Houston Division.

Nov. 5, 1998.

Richard Haynes, Graydon Wilson, Richard Haynes & Assoc., Houston, TX, for Plaintiffs.

William Helfand, Rachel Ziolkowski, Magenheim, Bateman, Robinson, Houston, TX, for defendants Daniel Shelor, Bellaire Police Dept. and the City of Bellaire, Texas.

Paul G. Aman, Diana Mueck, Houston, TX, for defendants Michael Leal and Carle Mueck.

Scott Anthony Durfee, Harris County District Attys., Office, Houston, TX, for defendant John B. Holmes, Jr.

Donald K. Eckhardt, Houston, TX, John Lee Arellano, Arellano & Assoc., Houston, TX, for Amicus.

### ORDER

HITTNER, District Judge.

Pending before the Court are the Motion for Summary Judgment filed by the plaintiffs Noel and Rebecca Allen ("the Allens") and the Motion for Summary Judgment filed by the defendants Michael Leal, Carle Upshaw, and the City of Bellaire, Texas. Having considered the motions, submissions, and applicable law, the Court declines to exercise supplemental jurisdiction over the defendants' breach of contract counterclaim. Thus, the Court will not decide the motion for summary judgment. Instead, the Court determines that the defendants' counterclaim should be dismissed without prejudice to permit a state court determination of the counterclaim.

### Introduction

This lawsuit arises out of the shooting death of Travis Allen ("Travis"). In the early morning of July 15, 1995, the Bellaire Police Department received a 911 call about a possible intruder at 4407 Acacia, Bellaire, Texas. When three police officers arrived at 4407 Acacia, they discovered Travis within the residence. Travis was lying on the ground, bleeding profusely. At that time, one of the officers, Daniel Shelor, departed, leaving only Leal and Upshaw. Travis subsequently was shot in the back by Leal and died from this injury.

This lawsuit was filed by Travis' parents individually and on behalf of Travis' estate and was originally brought in state court and later removed to this Court. The Allens bring the suit pursuant to 42 U.S.C. § 1983, alleging an intentional deprivation of Travis' constitutional rights. The original complaint named as defendants the City of Bellaire, Leal, Upshaw, and Shelor. After considering a motion to dismiss based on qualified immunity, the Court dismissed Shelor as a defendant but denied the motion in all other respects. Upshaw and Leal filed an interlocutory appeal of the Court's denial of qualified immunity. The Fifth Circuit dismissed the appeal finding that it was without jurisdiction to hear the appeal because "there is a significant fact-related dispute." *Allen v. Leal,* No. 97–20661 (5th Cir. April 21, 1998).

### The Mediation Process

Prior to the case proceeding as scheduled for a jury trial, the parties voluntarily attended mediation with M.A. "Mickey" Mills acting as the agreed mediator selected by the parties. The mediation took place on July 25, 1998. After a full day of mediating the case, the parties signed an agreement to settle all claims for the amount of $90,000.00. The Allens, who were represented by Graydon Wilson of the firm of Richard "Racehorse" Haynes & Associates, signed the agreement at the mediation. The Bellaire City Attorney represented the City at the mediation. The attorneys for the individual defendants were also present at the mediation. According to the terms of the agreement, the settlement of the claims was:

> subject to the approval of the City of Bellaire City Council, at a meeting of 8/3/98, and within 20 days after plaintiffs have filed a stipulation of dismissal under Rule 41, F.R.C.P. the City of Bellaire agrees to pay Noel C. Allen, Rebecca Allen and the estate of Travis Allen the sum of $90,-000.00 on or before 8/30/98.

*See* Settlement Agreement of July 25, 1998 at ¶ 1.

Elsewhere, the agreement states: "Each signatory hereto warrants and represents that he or she has authority to bind the parties for whom that signatory acts, except that the parties agree that the City of Bellaire is not bound until such time as it has approved this agreement by a majority vote of its city council." Settlement Agreement at ¶ 5.

On July 27, 1998 counsel for the Allens contacted counsel for the City of Bellaire and informed him that the Allens wanted to set aside the settlement agreement. Subsequently, the City of Bellaire City Council voted in favor of the settlement agreement on August 3, 1998.

On August 5, 1998 the Court conducted a hearing to determine the status of the case. At the hearing, Rebecca Allen informed the Court that she and her husband did not wish to be bound by the terms of the settlement agreement but rather, desired to proceed to trial. Mrs. Allen stated that she had concerns regarding the manner in which the mediation was conducted. Specifically, she stated that the mediator had "forced" her and her husband into settling the case and also misled them. The Court, therefore, released all parties from the confidentiality requirements of Rule 20I of the Local Rules for the Southern District of Texas in order for her to discuss her concerns with the Court [1] and in order for the Court to evaluate the validity of the settlement agreement. Mrs. Allen testified that although her attorney, Mr. Wilson, was present during the entire mediation process, she felt "coerced" and "intimidated" by the mediator into signing the settlement agreement.[2] She further informed the Court that the mediator stated that she and her husband would be responsible for paying all attorney's fees and costs if she did not agree to settle and that they would be "financially ruined." Apparently Mr. Wilson failed to advise the Allens of the pertinent federal statute and case law governing the award of attorney's fees and costs in federal civil rights cases in order for them to make a fully informed decision concerning settlement.[3]

The mediator, Mr. Mills, was not present at the August 5, 1998 Court hearing. However, given that his name and reputation were publicly excoriated by the plaintiffs and plaintiffs' counsel, the Court determined that, in fairness to Mr. Mills, he should be given an opportunity to defend his professional reputation and integrity as a mediator. As such, the Court relieved Mr. Mills from his duty of confidentiality.[4] Mr. Mills appeared at a status conference conducted on August 7, 1998 at which time he was provided an opportunity to present his side of the matter. Mr. Mills stated that the mediation process was entirely proper and that he did not engage in coercive conduct.

After the above mentioned hearings, the Association of Attorney–Mediators ("AAM") filed a motion to appear as amicus curiae to present the AAM's position on the confidentiality of the mediation process and the enforceability of settlement agreements generally. The Court granted the AAM's request to appear as amicus curiae in this case and the AAM has filed an Amicus Curiae Brief. In its brief, the AAM argues that its "primary concern is the integrity of the mediation process; AAM is not taking a position with respect to the final outcome of this particular case." *See* Amicus Curiae Brief of Association of Attorney–Mediators at 3, filed September 24, 1998.

Notwithstanding the AAM's position concerning the "integrity of the mediation process," one of the authors of the amicus curiae brief, who is the president of the Houston chapter of the AAM, John Lee Arellano, was publicly quoted as saying in reference to this case: "[w]hat some people might consider a little bullying is really just part of how mediation works." *See* Charlotte Aguilar, *No Decision in Allen Case*, 14 Southwest

---

1. Local Rule 20I provides: "All communications made during ADR procedures are confidential and protected from disclosure and do not constitute a waiver of any existing privileges and immunities."

2. The Court notes that the Allens initially argued that they were coerced into signing the settlement agreement. However, in their motion for summary judgment they completely fail to address this matter.

3. *See* 42 U.S.C. § 1988 (setting forth when attorney's fees may be awarded to a prevailing party in a federal civil rights case).

4. The Court fully recognizes the importance and gravity of the rules of confidentiality governing mediation. However, because the plaintiffs, in this particular situation, actually "opened the door" by attacking the professionalism and integrity of the mediator and the mediation process, the Court was compelled, in the interests of justice, to breach the veil of confidentiality.

News 1, 22 (October 6, 1998). This egregious statement, directed to the public, made by the president of the AAM, outside of the courtroom and in a local newspaper, is especially deplorable given that, pursuant to the standards governing the conduct of mediators in Texas, "[a] person appointed to facilitate an alternative dispute resolution procedure under this subchapter shall encourage and assist the parties in reaching a settlement of their dispute *but may not compel or coerce the parties to enter into a settlement agreement.*" Tex.Civ.Prac. & Rem.Code § 154.053(a) (Vernon 1997) (emphasis added). Coercion or "bullying" clearly is not acceptable conduct for a mediator in order to secure a settlement, notwithstanding the statement of the president of the AAM.[5]

### Breach of Contract Counterclaim

After the Allens informed the Court and the defendants that they would not file a stipulation of dismissal per the settlement agreement, the defendants sought leave of Court to amend their pleadings to add a counterclaim against the plaintiffs for breach of the settlement agreement. This request was granted. In the counterclaim, defendants argue that pursuant to Texas law, mediated settlement agreements constitute enforceable contracts. *See* Tex.Civ.Prac. & Rem.Code § 154.071(a) (Vernon 1997) ("If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract."); *see also Davis v. Wickham,* 917 S.W.2d 414, 416–17 (Tex.App.—Houston [14th Dist.] 1996, no writ). According to the defendants, the Allens' attempt to withdraw from the agreement, which constitutes a binding, enforceable contract, constitutes a breach. *See In the Matter of Marriage of Banks,* 887 S.W.2d 160, 163–64 (Tex.App.—Texarkana 1994, no writ)

A party who has reached a settlement agreement disposing of a dispute through alternative dispute resolution procedures many not unilaterally repudiate the agreement. If voluntary agreements reached through mediation were non-binding, many positive efforts to amicably settle differences would be for naught. In order to effect the purposes of mediation, and other dispute resolution mechanisms, settlement agreements must be treated like other contracts, reached after arms length negotiations. . . . No party to a dispute can be forced to settle the conflict outside of Court; but if a voluntary agreement that disposes of the dispute is reached, the parties should be required to honor the agreement.

(internal citation omitted); *see also Clopton v. Mountain Peak Water Supply Corp.,* 911 S.W.2d 525 (Tex.App.—Waco 1995, no writ); *King v. Bishop,* 879 S.W.2d 222 (Tex.App.—Houston [14th Dist.] 1994, no writ).

The Allens, on the other hand, contend that the settlement agreement is not an enforceable contract for three reasons: (1) the agreement is indefinite; (2) the plaintiffs withdrew from the agreement prior to any contract having been formed; and (3) the agreement exists as a benefit for a third party (Grace Allen, Travis' minor sister), and the plaintiffs withdrew from the agreement prior to Grace's acceptance of the agreement.[6]

For the reasons that will be more fully discussed *infra,* the Court will not reach the enforceability of the settlement agreement or whether fact issues exist which preclude a summary judgment determination.

### Supplemental Jurisdiction

■ As the original claim in this action, the § 1983 claim, arises under federal law, and the parties in this case are not diverse, the Court would have to elect to exercise supplemental jurisdiction over the breach of

---

5. It is the Court's belief that the overwhelming majority of the mediators in Texas, as well as the nation, do not subscribe to the proposition that "bullying is really just a part of how mediation works."

6. The Court notes that Grace Allen, a minor, is not, nor has she ever been a party to this lawsuit.

Further, the discussion of Grace Allen, as the intended third-party beneficiary of any recovery from this lawsuit, was brought to the Court's attention for the first time only after the plaintiffs attempted to withdraw from the settlement agreement.

contract claim as it is a purely state law claim between non-diverse parties. 28 U.S.C. § 1367 governs the Court's exercise of supplemental jurisdiction. Section 1367 instructs that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Section 1367(c) provides that the "district court *may* decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises novel or complex issues of state law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

28 U.S.C. § 1367(c) (emphasis added).

The Court determines that it will not exercise its supplemental jurisdiction over the breach of contract counterclaim in this case. As stated above, supplemental jurisdiction may be exercised over those state law claims that "are so related to the claims in the action" within the Court's original jurisdiction "that they form *part of the same case or controversy* . . . . " In other words, the counterclaim must be so logically intertwined with the plaintiffs' claim that a court cannot reasonably determine one without the other. A single common issue of law or fact is not enough for supplemental jurisdiction.

In this case, the defendants' breach of contract claim and the Allens' claim under § 1983, concerning their son's death, are completely separate causes of action. The breach of contract claim arose well after the plaintiffs filed their suit against the defen-dants in 1996, and three years after the tragic shooting of Travis. The fact patterns for each cause of action are clearly distinct and separable. Specifically, each cause of action may be decided without any reference to the facts of the other cause of action. Therefore, as a matter of law and for the additional reasons stated *infra* the Court declines to exercise supplemental jurisdiction over the state law claim of breach of the mediation agreement. Accordingly, the Court determines that the breach of contract counterclaim should be determined by a state court.

The Court is gravely concerned with the plaintiffs' frontal attack on the mediation process itself. The mediation process has been responsible for the resolution of countless cases in this district, thereby avoiding the necessity for expensive adversary proceedings, including jury and non-jury trials. A significant amount of time and energy has been expended by the Court and the parties in this case as a result of the plaintiffs' actions. The conduct of the plaintiffs and their attorneys in attempting to upset a settlement of this case appears to constitute an abuse, even if unintentional, of the federal trial process. Considering the enormity of the loss of a child, the Court is perplexed that the Allens would have agreed to settle this case (even assuming arguendo that the mediator exerted pressure on the plaintiffs to settle the case) without being certain that such a settlement was appropriate. The Court is even more concerned that counsel for the Allens failed to advise his clients of the seriousness and finality of signing a settlement agreement if they had any reservations whatsoever. Moreover, the Court has not been advised of any actions taken by counsel for the Allens to protect them against any untoward pressure allegedly exerted by the mediator or the defendants. The Court therefore determines that it would be a further waste of federal judicial resources to proceed with the plaintiffs' 42 U.S.C. § 1983 claims before the defendants' breach of contract counterclaim has been decided by a state court. Accordingly, the § 1983 matter will be administratively closed pending a final determination of the state law

claim, *i.e.*, the breach of contract claim, by a Texas court of appropriate jurisdiction.[7]

Therefore, based on the foregoing, the Court hereby ORDERS that the defendants' breach of contract counterclaim is DISMISSED WITHOUT PREJUDICE. The plaintiffs' 42 U.S.C. § 1983 cause of action is STAYED pending a final resolution of the breach of contract cause of action in a state court and this matter is ADMINISTRATIVELY CLOSED pending a state court judgment.

---

**7.** In the Court's opinion, the delay of the resolution of this case in federal court is the sole cause

and responsibility of the plaintiffs and the plaintiffs' counsel.